IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEATRI J. LARRY,                              )
                                             )
      Plaintiff,                          )
                                             )
vs.                                          )    CIV. ACT. NO. 1:19-cv-1008-TFM-MU
                                             )
CITY OF MOBILE, ALABAMA,                     )
                                             )
      Defendant.                          )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendant City of Mobile, Alabama's Motion for Summary Judgment* (Doc. 45, filed 5/14/21) along with the incorporated brief and evidentiary support (Docs. 46, 47).  Plaintiff timely responded and Defendant timely replied.  *See* Docs. 51, 52, 53, 54, 57. The motion has been fully briefed and is ripe for review.  Having considered the motion, response, reply, and relevant law, the Court finds the motion for summary judgment (Doc. 45) is due to be **GRANTED**.

### I.   PARTIES, JURISDICTION, AND VENUE

Plaintiff Deatri J. Larry ("Plaintiff" or "Larry") filed his complaint again Defendant City of Mobile, Alabama ("Defendant" or "the City").

The District Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights) as Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is an African-American who was employed as a Fire Service Driver with the City of Mobile's Fire-Rescue Department ("MFRD").  The MFRD is a part of the City of Mobile, Alabama.  Plaintiff began his employment in 1995 serving as a paramedic and firefighter.[2] Plaintiff was already a member of the Army Reserves at this point.[3]  He was eventually promoted to Fire Service Driver.  During his employment with MFRD, Plaintiff was deployed by the Army Reserves on multiple occasions to include 2003-2004, 2006-2008, 2010-2011, and 2014-2017.

Plaintiff returned to the MFRD on February 6, 2017 after his last deployment.  During that deployment he experienced significant injuries as the result of his military service, most notably a severe back injury and related nerve damage received during combat.  Upon his return to the MFRD on February 6, 2017, he underwent a fitness for duty examination at the Occupational Health Center.  *See* Doc. 46-2, Attachment B.  The doctor who examined him determined that Plaintiff could not perform the essential job functions of paramedic (his position prior to his deployment) and would present a direct threat to himself or others if he attempted to perform the job.  *Id*.  MFRD (then led by Acting Chief Pappas) placed him in an administrative role in the MFRD Emergency Medical Services Staff Division to accommodate for his military-service

---

[1] The facts are construed in the light most favorable to the Plaintiff as is required for the purposes of summary judgment.  However, as the Court will later discuss, inadmissible and excluded matters are not considered.  This includes portions of Plaintiff's disputed facts which rely exclusively upon an excluded declaration.

[2] Plaintiff and Defendant quibble of the use of terms as ranks or positions. For the purposes of the statement of facts, the Court finds that they are a distinction without a difference and are not a *material* fact at issue.

[3] The record shows that Plaintiff joined the Army in 1985 and at some point separated from active duty and either transitioned or enlisted in the Army Reserves.  He served with distinction until he medically retired in 2017.

connected injuries.  MFRD discontinued his paramedic incentive pay which resulted in a  20%

reduction of his overall pay.[4]

While Plaintiff was deployed in 2016, MFRD requested twelve (12) vacancies for Captain

and administered a promotional examination.  Eleven (11) of the vacancies were filled – all were

white men.  The twelfth position remained vacant.  Upon his return in 2017, Plaintiff requested

and received the opportunity to take a supplemental promotional examination as he would have

been eligible during his military deployment.  He took the exam in July 2017.

A few months prior in May 2017, Chief Sealy was selected as the new Chief of MFRD

after a three year vacancy in the position filled by an Acting Chief.  As part of his application for

the position, he included a strategic vision document.  *See* Doc. 46-4 at 3-6 and Attachment A.  As

part of the strategic vision, Chief Sealy discussed the need to reduce the number of "staff positions"

(i.e. support personnel) and a restructuring of leadership including a reduction in the number of

chief positions through retirements and attrition.  *See* Doc. 46-1, Attachment A at 3.  Chief Sealy

also discussed manpower issues and the allocation of resources.  *Id*. at 6.  Specifically, he indicated

his opinion that the number of staff positions was too high and unacceptable given the shortages

of field personnel.  *Id*.  Chief Sealy also said many of these staff position holders had forgotten

what it was like to serve in the field and adopted the Marine Corps motto "Every Marine is a

Rifleman."  *Id*.  Chief Sealy's strategic vision was very clear that if hired, he intended to eliminate

many of these positions and streamline certain operations to free up money and personnel to add

---

[4] Plaintiff asserts that he previously continued receiving the paramedic incentive pay after returning from a prior deployment despite having been assigned to the Training Division at that time.  *See* Doc. 52 at 8.  Defendant asserts that because he could no longer perform paramedic functions, Plaintiff was no longer eligible for the pay.  *See* Doc. 47 at 4.  The Court need not resolve this as a material fact because it is not addressed further by either party in their respective briefs.

firefighters to accomplish the primary mission. *Id*. He also made it clear that all positions would need to be able to serve in a firefighter role as needed. *Id*. As part of his reorganization plan, there would be 8 fewer District Chief positions and 10 few Captain positions – some would be eliminated immediately while others would be done by attrition over a few years. *Id*. at 9. He also indicated that the remaining staff roles would be rotated frequently with personnel moving back into the field. *Id*. Chief Sealy also discussed the need to diversify its membership and discussed various ways to do so. *Id*. at 13. Chief Sealy also discussed issues with unscheduled leave and specifically discussed in detail sick days and military leave. *Id*. at 16. Though he acknowledged that military leave is protected by federal law and that he is also a veteran, he discussed his view that some members view the military as their primary job and the MFRD as a part time supplement. *Id*. Finally, Chief Sealy also discussed the fitness program. *Id*. at 18. Specifically, he indicated significant concerns about a lack of fitness and proposed annual testing of all personnel for health and fitness. *Id*. After Chief Sealy was hired into the role, he began implementing parts of his strategic plan. *See* Doc. 46-4 generally. Specifically, he changed the command structure, reduced the number of Captains, and reallocation of resources to address manpower shortages.

In July 2017, Plaintiff took the supplemental promotional examination and placed on the list of eligible promotions though he was not promoted.[5] His examination results expired in June 2018. Additionally, in 2018, due to the physical restrictions placed on his duties due to the February 2017 fitness for duty evaluation, Plaintiff was identified as one of the MFRD employees not performing full duties as required by Chief Sealy, though he was performing the full duties of the staff position in which he had been placed by Acting Chief Pappas. Therefore, in November

---

[5] Plaintiff argues that he should have been considered for the twelfth unfilled Captain position from 2016. Defendant asserts there was no available position in 2017.

2018, Plaintiff underwent another fitness for duty examination.  The conclusions and results were the same as the February 2017 examination.

In March 2019, Plaintiff took another promotional examination and his score ranked him twelfth on the promotion list.  The top six candidates were promoted to Captain on May 11, 2019.  The next two candidates were promoted in August 2019.

In August 2019, Plaintiff and Mark Shobe both received letters which identified them as employees who could not perform the full functions of their positions.  *See* Doc. 46-3, Attachments G, H.  Two other employees (Richard McMillian and Dexter Pettway) received the same letters a few months later.  *Id.*  None of the other three employees served in the military.  Additionally, Shobe is Caucasian while McMillian and Pettway are African-American.  Shobe and McMillian elected to apply for disability retirement.  Plaintiff, through his counsel, conveyed that he did not accept the options presented and would not voluntarily leave.[6]  *See* Doc. 46-3, Attachment I.

The Court now turns back to the administrative complaints made by the Plaintiff over the course of time since his return from deployment in February 2017.  In late 2017,[7] Plaintiff filed a complaint with the Department of Labor ("DOL") that his pay had been unfairly reduced after his deployment.  Ultimately, DOL relayed that "military discrimination could not be verified" and subsequently the Department of Justice ("DOJ") declined to provide legal representation for the

---

[6] In September 2019, the final two candidates from the March 2019 promotional examination list were promoted to Captain.  Defendant argues Plaintiff was not eligible because he did not make an election from the choices presented in the August 2019 letter.  However, this factual assertion has little merit because as aptly noted by Plaintiff, the choices did not include remaining a firefighter which is what the promotion would have included.

[7] Neither party provides a precise date of the DOL complaint.  The DOL complaint is provided as exhibits to both the motion and response in opposition.  *See* Doc. 46-1, DX5, at page 131 of the PDF; Doc. 53-8.  However, neither form contains a precise date that the form was submitted to DOL.  The Court extrapolates from the form that it was November 20, 2017 or later because the employment dates state 110/30-1995 to 11/20/2017 under Section III, #15.

USERRA matters raised in his DOL complaint.  *See* Doc. 53-20; Doc. 46-3, Attachment L.  In June 2018, Plaintiff filed an EEOC charge for race discrimination and retaliation for being denied his paramedic incentive pay and a promotion to Captain.  DOJ also declined to intervene in the EEOC matter and provided a Notice of Right to Sue letter on November 18, 2019.[8]  Plaintiff filed a second EEOC complaint in November 2019 to add a retaliation claim related to his termination.  On December 10, 2020, Plaintiff, upon his request, received a Right to Sue letter from EEOC.  *See* Doc. 46-3, Attachment P.  The letter indicated that it makes no finding as to the merits of the complaint.[9]

On November 20, 2019, Larry filed his original Complaint against the City.  *See* Doc. 1. Eventually, after the City filed its motions to dismiss, Plaintiff requested leave to file a second amended complaint which the City did not oppose, the Court granted, and was filed.  *See* Docs. 17, 19, 20, 21, 22.  In his Second Amended Complaint (the operative complaint), Plaintiff asserts

---

[8] Defendant states that DOJ determined there was no basis upon which to conclude that unlawful discrimination occurred.  *See* Doc. 47 at 9.  However, a review of the cited letter makes it clear that DOJ made no such determination.  *See* Doc. 46-3, Attachment N.  Rather, DOJ merely issued a Right to Sue Notice upon Plaintiff's request since 180 days had elapsed.  The letter further states "[t]his Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious."  *Id.*

[9] Defendant states in its motion that "Again the EEOC determined that there was no basis upon which to conclude that unlawful discrimination occurred."  *See* Doc. 47 at 9.  However, that again misrepresents the contents of the EEOC notice.  There was no determination made.  *See* Doc. 46-3, Attachment P.  Rather the EEOC states "The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute.  This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes.  The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge."  *Id.* Plaintiff's counsel accurately challenged this fact in the disputed facts.  Defense counsel cites to the affidavit submitted by Leslie Ray for the conclusion (Doc. 46-3, ¶ 17).  Though Leslie Ray does not appear to be an attorney, Defense counsel is cautioned that the letters themselves (attached to the affidavit) are clear to any attorney.  The Court declines to construe this as a deliberate misrepresentation at this time, but cautions counsel to be more careful in presenting "facts" in motions to the Court.

claims for Title VII race discrimination (Count I), Title VII retaliation (Count II), and violations of USERRA (Count III). *See* Doc. 22. He seeks reinstatement to his position in the MFRD or some other comparable position, the award of a promotion to Captain, back pay and benefits, compensatory damages in the amount of $300,000, and attorney's fees/costs. *Id*.

On May 14, 2021, Defendant filed the instant motion for summary judgment along with a brief and evidentiary material in support. *See* Docs. 45, 46, 47. Plaintiff filed his response in opposition along with a statement of disputed facts and evidentiary materials. *See* Doc. 54-1;[10] Docs. 52, 53. Defendant filed its reply along with two motions to strike. *See* Docs. 57, 58, 59. Plaintiff filed his response in opposition to the motions to strike. *See* Docs. 60, 61. Defendant filed its replies. *See* Docs. 62, 63. At this point, the summary judgment briefing became fully submitted and ripe for review.

On November 5, 2021, the Court reviewed the Defendant's "Motions to Strike" (Docs. 58, 59) and construed them as objections. *See* Doc. 74. The Court sustained the objection as to the declaration of Myron King (Doc. 53-6) and excluded it from consideration on the motions for summary judgment. The Court sustained in part and denied in part the objections as to Plaintiff's declaration. Specifically, the Court ordered Plaintiff to submit a copy of the original signature of the declaration in accordance with the local rules and Plaintiff complied. *See* Doc. 74 at 11-12; Doc. 75. Further, the Court sustained the objections as to certain paragraphs and excluded them. The remaining paragraphs are considered in this review.

---

[10] Plaintiff filed his initial response in opposition (Doc. 51) with attachments of "Declaration of Plaintiff" (Doc. 51-1) and "Plaintiff's Response to Defendant's Statement of Facts" (Doc. 51-2). Plaintiff then filed separately "Plaintiff's Corrected Response to Defendant's Statement of Facts" (Doc. 52). Plaintiff also filed a motion for leave to file a corrected response and attached the corrected response as an exhibit. *See* Doc. 54 and 54-1. The Court granted the motion (Doc. 71) and therefore considered Doc. 54-1 as the operative response in opposition as well as the corrected response to the statement of facts (Doc. 52) when conducting this review.

### III.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[11] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited

---

[11] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553).  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).  The court must view the facts and draw all reasonable inferences in favor of the non-moving party.  *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.").  However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted).  Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).  "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th

Cir. 2005) (citation omitted).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  FED. R. CIV. P. 56(e).

## IV.   DISCUSSION AND ANALYSIS

The Court will address the Title VII and USERRA disparate treatment/discrimination claims first followed by the retaliation claims.

## A.   Title VII – Race Discrimination (Count I)

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination."  *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2002) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004))

"Direct evidence of discrimination is 'evidence which reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee.'" *Wilson*, 376 F.3d at 1086 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999)). "[D]irect evidence is evidence that 'if believed, proves the existence of a fact without inference or presumption.'" *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.*

Plaintiff does not directly argue that he presents any direct evidence to support his claim of race discrimination. *See* Doc. 54-1 generally. Moreover, he spends little time in his response to summary judgment addressing the Title VII race discrimination claim – spending the bulk of his efforts on the USERRA claim with significantly less discussion on the Title VII claims. However, he does provide limited discussion with regard to the Title VII claim on race discrimination in the failure to promote and termination. *See* Doc. 54-1 at 3, 13-14. In those brief references, he seemingly relies on circumstantial evidence under which the Court would then apply the applicable burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973) [hereinafter *McDonnell Douglas*], and its progeny. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010).

Under the *McDonnell Douglas* analysis, a plaintiff must first establish a *prima facie* case of race discrimination. To do so, he must show (1) that he belongs to a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified to perform the job in question, and (4) that the employer treated "similarly situated" employees outside his class more favorably. *Jenkins*, 26 F.4th at 1249 (citation omitted); *Lewis v. City of Union City*, 918 F.3d 1213,

1220-21 (11th Cir. 2019) (citation omitted).  "To establish the fourth prong, the plaintiff must present evidence of a comparator—someone who is 'similarly situated in all material respects.'" *Jenkins*, 26 F.4th at 1249 (quoting *Lewis*, 918 F.3d at 1227-28); *see also Butts v. CentiMark Roofing Corp.*, 2022 U.S. App. LEXIS 8354, *4, 2022 WL 950938, *2 (11th Cir. Mar. 30, 2022) (quoting same from *Lewis*).  If the Plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Lewis*, 918 F.3d at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).  Should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination.  *Id*.; *see also Cobb v. Floyd*, 2022 U.S. App. LEXIS 7701, 2022 WL 856074 (11th Cir. Mar. 23, 2022) (citing *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)).  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Brooks v. County Comm'n of Jefferson Cnty. Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

The Court will now turn to the burden shifting analysis as it applies to this case.

**1.   Prima Facie Case**

To establish a *prima facie* case, Larry must show he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class or that his employer treated similarly situated employees outside of his class more favorably.

Much like Plaintiff, Defendant does not spend much time on analysis on the Title VII claims, but rather glosses through its conclusions that the *prima facie* case is not made.  *See* Doc.

47 at 12-13.  With regard to the promotion claim, Defendant states that Plaintiff fails to establish similarly situated comparators.  Defendant also buries in a footnote that Plaintiff was not qualified for the promotion to captain because he could not perform all the duties it requires.  *Id.* at 12 n. 1.  With regard to the termination claim, Defendant similarly concludes, without much discussion, that Plaintiff could not show that he remained qualified for the positions within the MFRD nor that a similarly situated comparator was treated differently.  *Id*. at 13.  Yet, Defendant's lack of effort on the other elements is not fatal to its argument because the failure of any element results in the failure to establish a *prima facie* case.  "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment" and "the onus is upon the parties to formulate arguments[.]"  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  However, ultimately, the Court reviewed the extensive evidence attached to both the motion and response to specifically address each element of the *prima facie* case.

The record is clear that Larry is a member of a protected class (black) so element 1 is satisfied.  Further, it is clear that both in terms of the failure to promote and the termination (or more aptly put as a failure to retain), that Larry suffered an adverse employment action which satisfies element 3.  Thus, the Court turns to the disputed elements 2 (qualification) and 4 (similarly situated comparators).[12]

---

[12] The Court notes that the Second Amended Complaint (Doc. 22) also discusses a 20% reduction in pay due to the removal of the additional pay attached to the Fire Service Driver / paramedic position in his section on Title VII, but never makes it entirely clear whether that is a claim.  Further, this point seems to be wholly ignored by the parties and both instead spend their efforts on the failure to promote and termination.  The Eleventh Circuit instructs that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust*, 43 F.3d at 599.  It is clear from all the briefing that the Plaintiff focused on the failure to promote to Captain and the termination in response to a motion for summary judgment on all claims.  Regardless, the arguments that apply to the failure to promote would also apply to the incentive

With regard to qualification (both on the failure to promote and termination/failure to retain), Plaintiff does not dispute that he could not perform certain duties due to his physical limitations.  The fact that new leadership implemented a plan that required all personnel to be able to perform all firefighting duties (e.g. riding on a fire truck) is not in and of itself discriminatory. The fact that the MFRD historically had more "Administrative" positions is irrelevant.  With changes in leadership come changes in policies.  Chief Sealey made it clear with his application through the strategic plan that he intended to make significant changes to the department to include a requirement that all personnel be essentially a "plug and play" for any role that may need to be filled.  The record clearly establishes that Plaintiff simply could not meet those new physical requirements.  Therefore, he cannot establish element 2 which is that he was qualified for the positions.

Finally, Plaintiff also fails to present valid similarly situated comparators who were not members of the protected class.  He presented three comparators (Gary McKinley, Robbie Gay, and Keith Everett), two of the three come from evidence this Court already determined was inadmissible: specifically, the declaration of Myron King.  *See* Doc. 74 at 2-6.  Moreover, even if it were not excluded, the information still provides no context as to when these events occurred. However, in reading the information about those comparators, it is clear that this was some time before the situation with Larry arose.  Specifically, in the response to summary judgment, both clearly were put in a position and served some time before their respective retirement/promotion. *See* Doc. 54-1 at 13.  As such, Plaintiff cannot establish them as similarly situated comparators faced with the changed landscape by new leadership who was hired to make changes to the MFRD.

---

pay removal as well as it is clear Plaintiff could no longer perform the job which is a requirement for the additional paramedic pay.

In sum, there is no context as to who made the decisions, when those decisions were made, or any other details which would permit the Court to consider them to be valid, similarly situated comparators.   A plaintiff must show that he and the comparators are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224.

Turning to the third comparator (Keith Everett), who was referenced in Larry's Declaration and therefore may be considered in the opposition to summary judgment, Plaintiff states "[a]nd just recently, White MFRD employee Keith Everett was moved from the field to Central Supply after injuring himself, this time by way of an unpublicized job requisition tailored specifically for Everett." Doc. 75, ¶ 44.  However, this again presents insufficient detail to permit the Court to conclude Everett is similarly situated in all material respects.  There is no discussion as to whether the injuries sustained by Everett resulted in a temporary inability to perform the full firefighter duties or what "just recently" means in the context of the decision to place him in a different position.[13]

It is Plaintiff's burden to establish a *prima facie* case, which he fails to do here.  As such, Plaintiff's race discrimination claims under Title VII fail.

### 2.  Legitimate, Non-discriminatory Reason

However, *even if* Larry could establish a prima facie case of racial discrimination the burden would shift to Defendant to rebut it by producing evidence that its action was taken for some legitimate, non-discriminatory reason.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325-26 (11th Cir. 2011) (internal citations omitted).  If the employer meets its burden of

---

[13] "If a plaintiff cannot produce a comparator, he can still present a triable issue of fact through a 'convincing mosaic' of circumstantial evidence that would allow an inference of discriminatory intent.  *Butts*, 2022 U.S. App. LEXIS 8354, *5, 2022 WL 950938, *2 (citing *Lewis*, 918 F.3d at 1220 n. 6).  However, Plaintiff makes no attempt to argue a convincing mosaic and the Court finds the record does not support such an argument.

production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Id*. Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")). The legitimate reasons offered must be "clear and reasonably specific" to afford the plaintiff an opportunity to show pretext. *Burdine*, 450 U.S. at 258. Courts are not in the business of adjudging whether employment decisions are prudent or fair. *Hossain v. Steadman*, 855 F. Supp. 2d 1307, 1315 (S.D. Ala. 2012). The sole concern is whether unlawful discriminatory animus motivated a challenged employment decision. *Id*.

Here, the Defendant clearly produces legitimate, nondiscriminatory reasons for its actions. With regard to the failure to promote, the twelfth captain's vacancy was never filled in 2016-2017. Moreover, with regard to the failure to retain (termination), Defendant notes that new leadership brought in new policies and procedures that required all sworn firefighter positions to be able to perform the full scope of firefighter duties including donning full gear, riding a fire truck, and performing fire rescue activities. The record is also clear that Plaintiff could not perform that full range of duties.

### 3.  Pretext of Discrimination

Since Defendant has articulated legitimate, nondiscriminatory reasons for its employment decisions pertaining to Larry, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason[s] of the employer [are]

pretext for illegal discrimination." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (quoting *Wilson*, 376 F.3d at 1087). This analysis "proceeds to a new level of specificity…." *Smith*, 644 F.3d at 1326. "[I]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Id*. Plaintiff's burden is to show "*both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotations omitted; emphasis in original). To establish pretext, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atlantic Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quotations omitted). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Id*. "When an employer has 'contradictory accounts of historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice." *Brown v. Mobile Cnty. Comm.*, 79 F. Supp. 3d 1259, 1276 (S.D. Ala. 2015) (quoting *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000)).

Much for the same reasons previously described on the *prima facie* elements, Plaintiff merely makes unsupported statements regarding racial discrimination and pretext. He merely indicates his belief that the failure to promote to Captain and the failure to create an administrative position for him was motivated by racial animus. However, nothing in Plaintiff's admissible

record offsets the Defendant's proffered reason which was that administrative positions were being reduced and eliminated and that he could not physically perform the full scope of firefighter duties as was now required. Further, the evidence shows that others including Mark Shobe (who Plaintiff points to as a white comparator) were given the same choices – apply for disability retirement, transfer to another job with the City, or be terminated from the position as a firefighter. *See* Doc. 46-3, Attachments G, H. In sum, Plaintiff fails to show the Defendant's reasons are pretextual by showing that the reasons were false and the true reason was discrimination.

Therefore, even if Plaintiff had made out a *prima facie* case, his claims would also fail at the pretext stage of the *McDonnell Douglas* analysis and summary judgment is granted on the Title VII race discrimination claims.

**B.     USERRA - Discrimination (Count III)**

USERRA was enacted to prohibit employment discrimination based on military service. 38 U.S.C. §§ 4301, 4311. "Section 4311 prohibits employers from discriminating against employees on the basis of military service and retaliating against individuals[.]" *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1234 (11th Cir. 2005). Section 4311(a) provides that a person who is a member of a reserve component shall not be denied "retention in employment, promotion, or any benefit of employment" on the basis of their military membership. 38 U.S.C. § 4311(a); *see also Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014) (quoting statute). An employer violates this section if its employee's military membership was a "motivating factor" in its adverse action unless it "can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c). In sum, this is called the "but for" test. *Coffman*, 411 F.3d at 1238; *see also Annarumma v. City of High Springs Fla*, 846 F. App'x 776, 782 (11th Cir. 2021) (quoting *Coffman* in reference to the "but for" test); *Landolfi v. City of*

*Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Coffman* for same).

To establish a prima facie case of discrimination under the USERRA, the plaintiff must demonstrate by a preponderance of the evidence that his military membership or service was a motivating factor in the employer's decision. *Coffman*, 411 F.3d at 1238 (citation omitted). A motivating factor does not have to be "the sole cause of the employment action. *Id*. Rather, "it is one of the factors that a truthful employer would list if asked for the reasons for its decision." Id. (quotation omitted). "Circumstantial evidence plays a critical part in these cases, 'for discrimination is seldom open or notorious.'" *Id.* (quoting *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

> A court can infer a discriminatory motivation from a variety of considerations, such as: (1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility towards members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees.

*Annarumma*, 846 F. App'x at 782 (citing *Coffman*, 411 F.3d at 1238); *Landolfi*, 515 F. App'x at 834 (same). Once the plaintiff meets the *prima facie* burden, the employer may establish an affirmative defense by proving by a preponderance of the evidence that the legitimate reasons, standing alone, would have induced it to take the same adverse action. *Landolfi*, 515 F. App'x at 834; *see also* 28 U.S.C. § 4311(c)(1) (the employer does not violate the statute if "the employer can prove that the action would have been taken in the absence of [the employee's military status]."). Then, a "plaintiff may establish pretext indirectly by showing that an employer's proffered reason for its decision is unworthy of credence." *Id*. (citing *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

Turning to the claims at hand, Plaintiff alleged USERRA discrimination in the failure to

promote him to Captain and a failure to accommodate which resulted in the termination.  In looking to the various considerations, as with the Title VII claim, the Court finds that the temporal proximity between the military service and the adverse employment actions is too remote to support an inference.  Further, the Court also finds that Plaintiff presents no similarly situated employees in the context of his USERRA claims.  Thus, the Court looks to inconsistences to the proffered reasons for the decisions and expressed hostility towards members of the protected class.

Plaintiff relies upon Chief Sealy's statements in his strategic plan which were part of Chief Sealy's application for the Fire Chief position.  On page 16 it includes a section of Unscheduled Leave which states:

> Unscheduled leave such as sick days and military leave have an impact on our ability to full staff our apparatus.  Inconsistent application of the sick time abuse policy has lead [sic] to decreased morale as well as more personnel reporting off sick, creating voids in apparatus staffing.  The current policy regarding utilizing sick time is enforced for a time and then ignored for the next period of time.  This creates confusion and decreased morale among the troops.  This policy needs to be enforced at the District Chief level.
>
> Military leave is also a form of unscheduled leave that can create voids in manpower.  This is a program mandated by the Federal government for which there may no ability to alter.  I am a veteran myself and I honor those who serve, but recent trends show that more and more employees see the MFRD as a part time job addition to the military service and occupy a position within MFRD even though they may be on military leave for years at a time.  This situation needs to be addressed.

Doc. 46-4 at 29.[14]  Plaintiff argues this is explicit hostility (Doc. 54-1 at 6) while Defendant argues it is merely discussing manpower shortages and is not expressed hostility (Doc. 57 at 6-7).  While the statement does appear to be a simple acknowledgement of manpower shortages, for the purposes of this analysis, the Court, out of an abundance of caution, will construe it in favor of Plaintiff's interpretation (though still inferential) for the purposes of the *prima facie* case.

---

[14] It is page 16 of the strategic plan, but page 29 of the PDF document.

Therefore, the burden shifts to the Defendant to establish by a preponderance of the evidence that the legitimate reason, standing alone, would have resulted in the same adverse action.

Defendant asserts that in 2017-2018 there were no positions available for promotion to Captain. *See* Doc. 47 at 5-6. Plaintiff asserts there was a position from 2016 that was never filled, but does not dispute he would not have been immediately eligible for that position upon his return in February 2017. Chief Sealy was then selected as the Chief of the MFRD in May 2017. At this request, Plaintiff was offered the opportunity to take the promotional exam in July 2017 in order to be considered for future promotion. The promotional exam results are valid for one year which meant Plaintiff's expired in June 2018. As was made clear in his strategic plan, there would be no longer plain administrative positions within the ranks. Rather, all personnel (including Captains and even Chiefs) would be required to maintain the fitness and physical standards required to perform the full scope of a firefighter's duties (including riding a fire truck and donning fire gear). The record is clear from his February 2017 fitness for duty evaluation that Plaintiff was unable to perform such duties which is why upon his return he was placed in a solely administrative role. *See* Doc. 46-2, Attachment B. The record is also clear that several individuals including Plaintiff were identified as unable to do so. Therefore, they were informed of their options to apply for disability retirement, transfer to another job with the City, or be terminated from the position as a firefighter. The three other individuals (Shobe, McMillian, and Pettway) did not have military service and received the same notification and options. *See* Doc. 47 at 8. Therefore, Defendant has met its burden to show by a preponderance of the evidence that that the legitimate reason, standing alone, would have resulted in the same adverse action. That legitimate reason was that all positions would be required to perform every aspect of being a firefighter which would aid in manpower shortages and better permit the MFRD to attend public safety. This shifts the burden

back to show that the reason is pretext.

Plaintiff does not dispute that he was unable to perform certain firefighter duties, but argues that a Captain does not need to perform those duties and is primarily a managerial, administrative, leadership role.  Plaintiff's belief that based on the history of the position that he should have been accommodated does not simply make it so.  The restructuring of the department is a valid nondiscriminatory reason which not only applied to Plaintiff, but other non-military personnel who were presented with the same options. Simply put, Larry fails to offer concrete evidence beyond his own opinion that positions could still be administrative which would have offered him the ability to be promoted and retained.  Plaintiff attempts to argue inconsistencies in the reasons for Defendant's refusal to promote him to Captain, but none of the citations he makes offset the simple reality that all MFRD positions were beyond his physical capabilities in light of the new standards (which applied to everyone and not just military personnel).  Therefore, Plaintiff failed to rebut that the legitimate reason, standing alone, would have resulted in the same adverse actions and thus fails to establish a USERRA violation which results in summary judgment on the claims.

The Court notes that it does not appear that Plaintiff specifically addresses a failure to accommodate claim in his responsive briefing.  The Eleventh Circuit instructs that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust*, 43 F.3d at 599.  However, even in reading the briefing broadly (including his brief reference to 38 U.S.C. § 4312 in his disputed facts) and assuming that his reliance on the argument that he could serve in an administrative role, the Court still finds that this claim would fail.

38 U.S.C. § 4312 requires an employer to rehire covered employees.  Further, USERRA requires that for the purposes of rehiring:

In the case of a person who has a disability incurred in, or aggravated during, such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service—

    (A) in any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or

    (B) if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case.

38 U.S.C. § 4313(a)(3). However, neither of these statutes operate in perpetuity to an employee simply because they happen to be a member of the reserve components. They only apply to the act of reemployment. 38 U.S.C. § 4311 then operates to prevent employers from treating an employee differently simply because they are military. Further, 38 U.S.C. § 4316(c) prevents employers from summarily dismissing those employees for a limited period after they are rehired.

The undisputed evidence shows that Plaintiff returned from military service in February 2017. His fitness for duty evaluation revealed that his military injuries resulted in his inability to perform a number of physical duties required in his position. As a result, the MFRD accommodated him by putting him in an administrative position. Nothing about the above statutes require that they further accommodate him by changing the standards for a higher level position in order to render him eligible for promotion nor does the statutes require that they provide ongoing accommodations for continued employment should the positions change. Despite Plaintiff's reference to § 4312 and §4313(a)(3) in his disputed facts, he provides no citation or analysis that shows the accommodations must exist indefinitely or apply to promotional opportunities. *See* Doc. 52 at 15.

    Moreover, the MFRD did not terminate him within the one year "protected" period under

§ 4316(c).  Therefore, since it falls outside those statutes (and any other disability statute), any failure to accommodate claim would be linked directly to the other USERRA failure to promote and failure to retain (terminate) claims which as discussed above, failed.

**C.     Retaliation (Counts II and III)**

Pursuant to Title VII, an employer cannot discriminate against an employee "because he has opposed any practice made an unlawful employment practice…or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Additionally, USERRA also prohibits an employer from taking an adverse employment action against employees who seek to enforce the Act's protections.  38 U.S.C. § 4311(b).  An employer who takes an adverse action against an employee who exercises a right under USERRA has engaged in retaliatory conduct unless the employer shows it would have taken the action in the absence of the employee's  protected activity.  38 U.S.C. § 4311(b)-(c); *see Ward*, 580 F. App'x at 739 (citing *Sheehan*, 240 F.3d at 1013) (stating USERRA's enactment confirmed "that the standard of proof in a discrimination or retaliation case is the so-called 'but-for' test").  This is the same burden-shifting framework employed in USERRA's anti-discrimination provision. See, 38 U.S.C. § 4311(a); (c)(1).

Though the standards are similar between Title VII and USERRA, there are sufficient distinctions that the Court will address them separately to ensure clarity, though the result is ultimately the same.

**i.     Title VII**

The *McDonnell Douglas* burden-shifting analysis applies in cases of retaliation that rely on circumstantial evidence.  To establish a prima facie case for retaliation, the plaintiff must show: "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action;

and (3) he established a causal link between the protected activity and the adverse action." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (citing *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009)).   A plaintiff making a retaliation claim must establish that "[his] protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 133 S. Ct. 2517, 2534, 186 L. Ed.2d 503 (2013). After a plaintiff establishes a prima facie case, the Defendant must provide a legitimate, nondiscriminatory reason for the action. *Bryant,* 575 F.3d at 1308.   Once the defendant articulates a legitimate, non-discriminatory reason for their actions, the burden falls on the plaintiff to show that the defendant's reasons were false, and that retaliation was the real reason behind the defendant's actions. *Id*.

With regard to the first element of the *prima facie* case, Defendant couches by saying "[a]ssuming that Plaintiff's filing a DOL complaint and EEOC charges constituted protected activity" (Doc. 47 at 20).   Yet, it is abundantly clear to the Court that both would constitute protected activity. *See, e.g., Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (stating the filing of an EEOC charge is clearly protected activity in the context of a Title VII retaliation claim); *Ward v. UPS*, 580 F. App'x 735, 739 (11th Cir. 2014) (discussing plaintiff's burden to prove causation between Department of Labor complaint – the protected activity – and the adverse action).   As such, the first element is satisfied.

Defendant also glosses over the second element (adverse action), so the Court can only assume it is not in dispute. *See* Doc. 47 at 20.   However, the record is again clear to the Court that Plaintiff suffered an adverse action in that he did not receive the promotion and was ultimately terminated.   "In order to constitute an adverse employment action for purposes [of retaliation], the action must be materially adverse from the standpoint of a reasonable employee, such that it would

dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.*, 315 F. App'x 798, 799 (11th Cir. 2009) (citation omitted).  This "is inherently fact-specific and 'depend[s] upon the particular circumstances' of the case." *Allen v. S. Commc'ns Servs., Inc.,* 963 F. Supp. 2d 1242, 1251 (N.D. Ala. 2013) (citations omitted).  Failure to promote and termination are clearly materially adverse from the standpoint of an employee and would certainly dissuade a reasonable employee from making a charge of discrimination.  As such, the second element is satisfied.

The third element is where Defendant focuses its attention where it argues Plaintiff cannot show a causal link between his protected activity and the employment actions.  To demonstrate a causal connection, a plaintiff must show that (1) the decision-maker knew of his protected activity, and (2) the protected activity and adverse action were not wholly unrelated.  *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).  A plaintiff satisfies the first element by showing the decision-maker was aware of the formal complaint prior to the adverse employment action.  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Here, Plaintiff has established the decision-maker knew of his protected activities.  So the Court turns to the second question: whether the protected activity and the adverse action were not wholly unrelated.

Courts "construe the causal link element broadly so that plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008).  "To show causation, a plaintiff in a retaliation case need prove only that retaliatory animus was one factor in the adverse employment decision." *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010).  "But when there is a substantial delay between the protected activity and the adverse action, a

plaintiff must submit other evidence supporting causation to survive summary judgment." *Cooler v. Layne Christensen Co.*, 710 F. App'x. 842, 845 (11th Cir. 2017) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("A three to four month disparity…is not enough.")).

In the case at hand, the time frame between his DOL complaint is approximately mid-November 2017 or later in 2017 (*supra note* 7) which is more than 9 months from his return from military service (February 2017) and more than 4 months from when he took the promotional examination (July 2017).   To be retaliation, the protected activity must have preceded the retaliatory conduct.  Moreover, Plaintiff makes no temporal connection between the filing of his complaint in late 2017 to the failure to promote in the remainder of 2017 and the first half of 2018. Since Plaintiff's examination results expired in June 2018, he would have no longer been eligible for promotion until he again took the exam in 2019.   Therefore, the Court finds no temporal connection for the DOL complaint and the race retaliation claim.  Moreover, Plaintiff does not attempt to find a way to link the filing of a USERRA complaint with the DOL to a race retaliation claim.  Rather, on its face, that seemingly links more to the USERRA retaliation claim.  Regardless of whether considered here, it does not establish a nexus solely based on temporal proximity.

The EEOC complaint does clearly on its face tie to a race-based complaint.  The EEOC complaint was filed more than six months prior to the time frame in which he was not promoted in 2019.  The same time periods apply to Plaintiff's termination.  As such, the temporal proximity is too remote to establish the causal link standing alone. *See Clark Cty. Sch. Dist. v. Breeden*, 531 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (internal citations omitted) (holding that temporal proximity must be "very close" to be sufficient evidence of causality in the *prima face* case); *see also Gilliam v. United States VA*, 822 F. App'x 985, 990 (11th Cir. 2020) (citations

omitted) (the lapse of three months between the alleged discovery of the statutorily protected expression and the adverse employment action is too long to permit an inference of causation based on temporal proximity alone).

Plaintiff states "[u]sing the *McDonnell Douglas* framework, [Plaintiff's] prima facie case creates a presumption of unlawful discrimination…"  However, despite that general statement, there is no analysis to discuss meeting that *prima facie* case.  And unfortunately, simply stating the *prima facie* case is met is insufficient.  However, for the purposes of this analysis, the Court will assume, without deciding, that Plaintiff could make out a *prima facie* case.  This shifts the burden to the Defendant to rebut the presumption by proffering a legitimate, nondiscriminatory reason for the action.  They have done so with the previously discussed reasons for the failure to promote and termination in that Plaintiff could no longer physically accomplish all the requirements of a firefighter position and the new leadership had determined every position must be able to do so.

Therefore, to defeat summary judgment, Plaintiff must demonstrate that the reason was merely a pretext to mask the real reason (that Plaintiff had filed an EEOC complaint.).  The Eleventh Circuit has repeatedly emphasized that "[p]rovided . . . the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ."  *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1137 (11th Cir. 2020) (citations omitted). "A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason."  *Id.* (internal modifications and citation omitted).  Thus, "in determining whether the plaintiff has met [his] burden to show pretext, [the Court remains] mindful that it is the plaintiff's burden to provide evidence from which one could reasonably conclude that

but for [his] alleged protected act, [his] employer would not have fired [him]." *Id*.  Plaintiff simply fails to do so.  As a result, his claims for retaliation under Title VII fail.

### ii.     USERRA

An employer engages in prohibited retaliatory conduct where it takes an adverse action against an employee motivated by that employee's efforts to enforce the USERRA, unless the employer can prove that the action would have been taken in the absence of the employee's protected activity.  *Ward*, 580 F. App'x at 739 (citations omitted).  The "but-for" test utilized in USERRA discrimination cases is similarly utilized in USERRA retaliation cases.  *See Ward*, 580 F. App'x at 739.

The case for retaliation is even more of a stretch than in his case for USERRA discrimination.  However, for the same reasons his USERRA claims for failure to promote and failure to retain (termination) fail, his retaliation claim also fails.  No person informed Plaintiff that his DOL complaint was the reason for their decisions and the temporal proximity is too far removed to provide any inference.  Even if the Court still considers Chief Sealy's expressed statements in the strategic plan as evidence of express hostility towards members of the protected class to conclude Plaintiff establishes a *prima facie* case of retaliation, for the same reasons as discussed previously in his USERRA discrimination claims, Plaintiff fails to show pretext as several non-military members in the same situation received the same options (disability retirement, other job with the City, or termination).  Consequently, summary judgment is also due on the USERRA retaliation claim.

## V.     CONCLUSION

Based on the foregoing discussion and analysis, it is hereby **ORDERED** that *Defendant City of Mobile, Alabama's Motion for Summary Judgment* (Doc. 45) is **GRANTED**.  A separate

judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 15th day of April 2022.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE